```
                                          FILED
IN THE UNITED STATES DISTRICT COURT FOR
   THE NORTHERN DISTRICT OF ILLINOIS      MAR 1 0 2008
            EASTERN DIVISION              Mar 10, 2008
                                          MICHAEL W. DOBBINS
                                          CLERK, U.S. DISTRICT COURT
```

UNITED STATES OF AMERICA,           )
    RESPONDENT/PLAINTIFF,         )
                                   )
                                   )  Criminal No: 04-CR-245
                                   )  Judge: Robert W. Gettleman
    VS.                          )

ALEJANDRO SANTIAGO,
    DEFENDANT/PETITIONER.

**08CV 1415**
**JUDGE GETTLEMAN**
**MAGISTRATE JUDGE MASON**

MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER

28 U.S.C. SECTION 2255 MOTION

INTRODUCTION

    Defendant Alejandro Santiago("Defendant") collaterally appeals his 360 months sentence and conviction for felon in possessing with intent to distribute in excess of fifty grams of cocaine base, in violation of 21 U.S.C. section 841(a)(1)(Count two), and being a felon in possession of ammunition that had traveled in interstate commerce, in violation of 18 U.S.C. section 922(g)(1), on the grounds that his conviction was obtained by a plea of guilty which was unlawfully induced; not made voluntary, and without understanding of the plea; that his trial counsel's deficient performance rendered the proceedings constitutionally inadequate, in violation of Defendant's Sixth Amendment right to effective assistance of counsl; and that prosecutorial misconduct deprived him of a fair trial, in violation of Defendant's Fifth Amendment right to due process of law.

1

## STATEMENT OF THE CASE

On May 18, 2004, a two-count indictment was returned against the defendant, Alejandro Santiago, also known as "Flaco." Santiago was charged with possessing with intent to distribute in excess of fifty grams of cocaine base, in violation of 21 U.S.C. section 841(Count One), and being a felon in possession of ammunition that had traveled in interstate commerce, in violation of 18 U.S.C. section 922(g)(1)(Count Two).

On March 18, 2005, the defendant entered a plea of guilty to both counts of the indictment. On July 28, 2006, the district court sentenced the defendant to a term of imprisonment of 360-months as to Count One and concurrent terms of 120-months as to Count Two. The district court entered its judgment on August 11, 2006. The defendant filed his notice of appeal on July 31, 2006.

## STATEMENT OF FACTS

Following an arrest for a traffic violation, Defendant Alejandro Santiago signed a written consent allowing police to search his Elston Avenue Apartment. Mr. Santiago then took police to the apartment and unlocked the entrance to facilitate police access. Police searched MR. Santiago's bedroom and found small amounts of cocaine, a crack pipe and safe. Mr. Santiago admitted that the safe contained cocaine and provided a key so officers could open it. Inside the safe police found 177 grams of schedule II Narcotic Drug, 16.7 grams of cocaine hydrochloride, a small amount of marijuana, 18 rounds of pistol ammunition, and about $550.00 in United States currency. A grand jury issued a two-count indictment charging him with possession of crack cocaine in violation of 21 U.S.C. section 841(a)(1).

A subsequent indictment charged offense under 21 U.S.C. section 841 (a)(1) and 18 U.S.C. section 922(g)(1). Shortly thereafter, the government advised pursuant to Title 21 U.S.C. section 851 that defendant Santiago had a prior conviction for a felony drug offense. That conviction, from 1991, exposed him to sentencing range of anywhere from 20 years to life under 21 U.S.C. section 841(b)(1)(A). The record reflects that Mr. Santiago had a state court conviction from 1990 for unlawful use of a weapon by a felon, and one dating back to 1981 for conspiracy to commit murder. This criminal history exposed him to a mandatory minimum sentence of 20 years.

Mr. Santiago entered into a plea agreement with the government on March 18, 2005. Initially, as part of that plea agreement, the parties agreed to disagree over whether the substance recovered from the safe was crack or powder cocaine. The parties also disagreed over the proper standard of proof the district court should use in reaching its findings at sentencing. The parties also disagreed concerning whether Mr. Santiago was entitled to reduction under 3E1.1(b) for acceptance of responsibility.

Under the advisory sentencing guidelines, Mr. Santiago was a criminal history category III. Based on the parameters of the plea agreement and depending on the district court's resolution of the disputed factors, Mr. Santiago faced a sentence of anywhere from 140-months to 20 years. In light of the section 851 notice, it was likely that Mr. Santiago would be statutorily enhanced to a 20 year minimum under Title 21 U.S.C. section 841.

A presentence investigation report was prepared on July 6, 2005. The probation officer assessed Mr. Snatiago ten criminal history points, rather than the six-points the parties agreed on, and put

3

him in a criminal history category V. The probation officer further noted that because Mr. Santiago did not receive any points under the guidelines for his 1981 conspiracy to commit murder conviction, his criminal history under the guidelines was under-represented by one level.

On August 1, 2005, the government filed a motion seeking an upward departure. The government sought the upward departure on three grounds, none of which involved conduct related to the offense to which Mr. Santiago pleaded guilty. First, the government argued that the instant sentence should be enhanced based on a 25-year-old conviction for conspiracy to commit murder, for which he served a 10-year sentence in the Illinois Department if Corrections.

## JURISDICTION

The jurisdiction of this Court rests on 28 U.S.C. section 2255 which provides:

> "A person in custody under sentence of a court established by Act of Congress claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack may move the court which imposed the sentence to vacate, set aside, or correct a sentence."

ARGUMENT

Defense Counsel's Deficient Performance Rendered The Trial Proceedings Constitutionally Inadequate In Violation of Defendant's Sixth Amendment Rights To Effective Assistance of Counsel And his Fifth Amendment Rights To Due Process of Law.

The Sixth Amendment guarantees the right to counsel as part of a defendant's fundamental right to a fair trial. Strickland v. Washington, 466 U.S. 668,684-85, 104 S.Ct. 2052,2063 80 L.Ed.2d 674 (1984). The right to effective assistance of counsel. Id. at 686, 104 S.Ct. at 2064. The guarantee of effective assistance of counsel comprises to correlative rights: the right to reasonably competent counsel and the right to counsel's undivided loyalty. Woods v. Geogia, 450 U.S. 261,271 101 S.Ct. 1097,1103, 67 L.Ed.2d 220(1981). The "duty of loyalty" has been described as "perhaps the most basic of counsel's duties" Strickland, 446 U.S. at 692, 104 S.Ct. at 2067. The Supreme Court enunciated the standards for judging a criminal defendant's contention that the Constitution requires a conviction to be set aside because counsel's assistance at trial was ineffective. see Strickland v. Washington, 466 U.S. 668,691, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984). To this end, the defendant must identify the act of omissions that are alleged not to have been the result of a reasonable professional judgment. Id. at 104 S.Ct. 2065. The court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. Second, the defendant must affirmatively prove prejudice. Id. at 104 S.Ct. 2067. He must show that

5

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id., a reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

Ineffective assistance of counsel frequently split into two ctegories: those which can be made based on the trial record, and those which are based on additional evidence on the outside the original record. A petitioner to develop the record in full. see United States v. Miskins, 966 F.2d 1263,1269(9th Cir.1992). Because the resolution of counsel claims ordinary requires the development of facts outside the original record, "[t]he customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on conviction under 28 U.S.C. section 2255." Unitede States v. Burges, 723 F.2d 666,670(9th Cir.), cert. denied, 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472(1984).

Appellate court prefer defendants to raise such claims in a habeas proceeding because it permits the district court judge first to decide whether the claim has merit, and second, if any, prejudice resulted. see e.g., United States v. Pope, 841 F.2d 954,958(9th Cir.1998). Since requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct attack. As a result, prisoners seeking habeas relief pursuant to section 2255 are to show both a violation of their constitutional rights and substantial prejudice or a procedural default: "[That prisoners] cannot assert claims they failed to raise at trial or on direct appeal unless they can show cause for the default and prejudice resulting from it.

see <u>Wainwright v. Sykes</u>, 433 U.S. 72,87, 97 S.Ct. 2497,2506, 53 L.Ed. 2d 294(1977); see also <u>Reed v. Farly</u>, 512 U.S. 339, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277(1994)(the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal...where the petitioner-whether a state of federal prisoner able only if the petitioner establishes "cause" for the waiver and shows "actual prejudice from the alleged...violations"). However, the traditional procedural default does not apply to ineffective assistance of counsel claims where such claims depend on matters outside of the scope of the record as in the instant case before this Court. see <u>Billy-Eko v. United States</u>, 8 F.3d 111,114(2nd Cir.1993); <u>see also</u>, <u>Engle v. Issac</u>, 456 U.S. 107,135, 102 S.Ct. 1558,1575-76, 71 L.Ed.2d 783(1972): The Supreme Court said that since the concepts of cause and prejudice are not rigid, but takes their meaning from...principles of comity and..., [i]n appropriate case those principles must yield to the imperative of correcting a fundamentally unjust incarceration...[w]e are confident that victims of a fundamental miscarriage of justice will meet the cause and prejudice standard." <u>Id</u>. Adefendant seeking to have his judgment <u>vacated</u> is entitled to "an evidentiary hearing on the claims," that of proven, would entitle defendant to relief. <u>sims v. Livesay</u>, 970 F.2d 1575,1579(6th Cir.1992).

Defendant contest his conviction on the ground that he was denied the effective assistance of counsel during sentencing proceedings, in derogation of his rights under the Sixth Amendment, and that he was deprived of a fair trial in violation of his Fifth Amendment right to due process. Defendant alleges the following specific errors and omissions that prejudice his defense by defense counsel:

Defendant Santiago, submits his first argument that counsel never

7

once objected to the subject matter jurisdiction for this prosecution for knowingly and possessing ammunition affecting interstate commerce.

Accordingly, this prosecution prejudice defendant's constitutional rights by charging defendant with affecting interstate commerce in the indictment.

The indictment charged defendant under 18 U.S.C. section 922(g)(1) having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed ammunition in and affecting interstate commerce, namely, one Remington Peters Co. 38 caliber round; in that the ammunition had traveled in interstate commerce prior to the defendant's possession of the ammuntion; in violation of Title 18 United States Code section 922(g)(1).

Defendant Santiago submits that there is no federal subject matter jurisdiction for this prosecution for ammunition above.

On about February 27,2004, a federal arrest was issued in Chicago, Illinois for subject Alejandro Santiago a.k.a. Sabu for possession with intent to distribute cocaine under docket number 04-CR-0225. On March 1,2004, apprehension responsibility for Santiago was transferred from D.E.A. policy and procedure. The United States Marshals Service (USMS) per DEA policy procedure. The USMS entered the warrant for Santiago into the NCIC system and began their efforts to locate and arrest Santiago. On March 2,2004, Deputy U.S. Marshals(DUSM) and members of the Chicago Police Department fugitive apprehension unit developed information that the fugitive might be in an apartment building located in the 4100 block of North Elston Avenue in Chicago, Illinois. They established surveillance in that area. The personnel involved in the surveillance were DUSMS John Jaehning, Richard Gainey, Nicole McPherson, James Biala along with Chicago Police Officers

8

Frank Jukonich and Randy Troche.

On March 2,2004, the law enforcement officers along with Santiago entered the apartment and determined that no one else was in the apartment. As the officers were searching the apartment, they observed a small plate with several chunks of white powder, two knives with white residue, and a "crack pipe." On top of a safe in the south bedroom of the apartment.

Officer Ohlin, explained to Santiago that Ohlin was participating in the search for a kidnapping victim and that the kidnapping victim had been in possession of several items of jewelry when he was abducted. Officer Ohlin asked Santiago what was in the safe. Santiago looked down at the floor and stated that the safe contained "dirt". Officer Ohlin asked Santiago what he meant by "dirt". Santiago stated that there was a couple of ounces of "crack" in the safe. Officer Ohlin asked Santiago if he would open the safe and if he had the combination for it. Santiago replied that you did not need the combination, just a key. Santiago pointed to a small metal key on his key ring , and stated that it would open the safe. He gave the key to Officer Jaehning to open the safe using the provided key.

Upon opening the safe, drug (suspected as crack cocaine) and (suspected marijuana) were recovered along with a plastic bag containing and approx. 25 rounds of ammunition. Defendant Santiago was charged by the grand jury, the indictment charged that defendant herein, having previously been convicted of imprisonment exceeding one year, knowingly possessed ammunition in and affecting interstate commerce, namely, one Remington Peters Co. 38 caliber round; in that the ammunition had traveled in interstate commerce prior to the defendant's possession of the ammunition, in violation of Title 18 United States

Code section 922(g)(1). Defendant Santiago never once possessed drugs or ammunition on his possessing the drug and ammunition that was locked in a safe where officers used a key to unlock the safe and remove the ammunition from the safe. Defendant Santiago is charged under 18 U.S.C. section 922(g)(1) with being a felon in possession of ammunition. Two recent Supreme Court cases, see <u>Jones v. United States</u>, 120 S.Ct. 1904(2000) and <u>United States v. Morrison</u>, 120 S.Ct. 1740(2000), taken together with an earlier Supreme Court precedent, <u>United States v. Lopez</u>, 118 S.Ct.1624(1995), compel the conclusion that the statute here is unconstitutional either as written or as applied in the indictment. The ammunition should therefore be dismissed.

Defendant Santiago recognizes transporting any firearm cross the state lines or travel around the inter city with a firearm and ammunition violates interstate commerce act. This understanding was recognized by the United States Court of Appeals for the Third Circuit has ruled that 18 U.S.C. section 922(g)(1) is constitutional in <u>United States v. Gateward</u>, 84 F.3d 670(3rd Cir.1996)(relying on <u>United States v. Bass</u>, 404 U.S. 336(1971) which was recently reaffirmed in <u>United States v. Singletary</u>, 2001 WL 1159002(3rd Cir. Oct. 2,2001)(proof of past transport of weapon in interstate commerce sufficient to support felon-in-possession conviction.)).

In the last five years, the Supreme Court has signaled a growing discomfort with the expansion of federal criminal statutes into the province of what has traditionally been state police power. This trend culminated last term with the completion of the "<u>Lopez</u> trilogy": <u>Lopez</u> and <u>Morrison</u> and <u>Jones</u>.

In light of the <u>Lopez</u> trilogy, the "felon in possession" prong of

18 U.S.C. section 922(g)(1) is no longer bears a sufficient nexus with interstate commerce to fall within the enumerated powers of the Federal government.

(1). United States v. Lopez, 115 S.Ct. 1624(1995); In Lopez, the defendant challenged his conviction under the gun-free school zone act 18 U.S.C. section 922(g). That section made it unlawful for any individual knowingly to possess a firearm in a school zone. Just for the record, defendant only possessed 25 rounds of ammunition that was locked under a key within his safe, defendant contended that the ammunition exceeded Congress powers to legislate under the commerce clause. The Courts agreed and ruled that statute unconstitutional. Lopez, supra., 115 S.Ct. at 1640-41.

The Lopez court set out three broad categories of activity that Congress may regulate under its commerce powers: (i)the use of the channels of interstate commerce; (ii)the instrumentalities of interstae commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (iii) those activities that substantially affect interstate commerce. Id. at 1648-49. the Court found that section 922(g). The Act exceeds Congress' Commerce Clause authority with respect to all three of these categories.

(2). United States v. Morrison, 120 S.Ct. 1904(2000), In Morrison, the Court continued and expanded Lopez's limiting approach to Congress' use of the Commerce Clause as a basis for federal jurisdiction over intrastate violent activity. The Morrison, Court struck down the violence against woman act, 42 U.S.C. section 13981, because the activity being regulated, gender-motivated violence, was deemed not an activity that substantially affects interstate commerce. Indeed,

11

Morrison, held that the "economic effect" aspect of Commerce Clause power, and even congressional findings regarding such economic effects, will not serve to save a criminal statute where, in commercial reality, no economic activity is involved.

(3). Jones v. United States, 120 S.Ct. 1740(2000), the Supreme Court applied the principles of Lopez and Morrision once again in Jones. At issue in Jones was the constitutionality of federal arson statute, 18 U.S.C. section 844(I), when applied to private property not used for any commercial venture. The statute at issue makes it a federal crime to "maliciously damage or destroy...any building...used in interstate or in any activity affecting interstate of foreign commerce." The Jones Court granted certiorari to answer two questions: (1) should the statute be construed not to reach owner-occupied residences, is it constitutional under the commerce clause. Jones, supra., 120 S.Ct. at 1908-09.

The Jones Court, heading its previous teaching in Lopez as well as "the interpretive rule that constitutionally doubtful constructions should be avoid," answered the first question in affirmative and thereby avoided the second question. The Court did so despite the presence of specific "jurisdictional element " in the statute, and despite arguments that the house used natural gas from interstate commerce and was insured by and mortgaged to out-of-state banks. To avoid holding the statute unconstitutional under Lopez, as well as to maintain "the federal-state balance " as a matter of statutory construction, the Court held that the statute "covers only property currently used in commerce or in an activity affecting commerce." Id., at 1912.

The Lopez trilogy has re-established the basic constitutional pro-

12

position that the founders did not cede to Congress a general police power. Rather, as the Court said in Morrison, "the regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the states."

The provision at issue here, 18 U.S.C. section 922(g)(1), makes it unlawful for a prior convicted felon to possess ammunition "in or affecting commerce."[2] The statute is not a regulation of the channels of interstate commerce and thus does not fit into the first Lopez category.

Moreover, the second Lopez category contemplates that a "thing in commerce" be currently in interstate commerce. See Jones, supra, 120 S.Ct. at 1912; Perez v. United States, 402 U.S. 146,150(1971)(example of things in commerce that need protection includes interstate shipment subject to theft). As the Third Circuit observed in United States v. Rodia, 194 F.3d 465(3rd Cir.1999), "[c]ourt hAVE, to date, appropriately limited [category two's] application to congressional regulation of instrumentalities actually engaged in interstate commerce, or objects such as railcars...,which are integrally related to an interstate commerce network." Id. at 474 n.3(ellipses and brackets in original)(quoting United States v. Bishop, 66 F.3d 569, 597(3rd Cir.1995)(Becker J. dissenting).

---

[2] 18 U.S.C. section 922(g)(1) states, in relevant part: It shall be unlawful for any person-(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year..., to ship or transport in interstate or foreign commerce, or possess

The mere fact that a gun or ammunition was once shipped across state lines does not make it, for all time, "a thing in interstates commerce." Accordingly, section 922(g)(1) does not fit into the second Lopez category.

With respect to the third permissible category of interstate commerce regulation, that of an activity that substantially affects interstate commerce, Jones and Morrison make clear that previous case law and congressional enactments relying on the proposition that a minimal nexus or effect on interstate commerce is enough to pass constitutional muster no longer have vitality. Evaluating the statute under the third category, it seems clear that section 922(g)(1) does not regulate an activity that substantially affects interstate commerce because the statute has nothing to do with commerce or any sort of economic activity, and Congress has made no legislative findings as to how the interstate possession of ammunition by a convicted felon impacts upon interstate commerce. Moreover, the mere fact that section 922(g)(1) contains a jurisdictional element, an element which has been interpreted to require evidence that the firearm or ammunition moved across state lines at some point in time during its existence, does not make the statute constitutional.

Whether or not the ammunition ever moved across state lines at some point in time during its existence locked up in a safe, the

---

in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which been shipped or transported in interstate or foreign commerce.

intrastate possession of that ammunition, without more is not a commercial activity and it cannot possibly have a substantial impact upon interstate commerce. Wherefore, for the foregoing reasons, the statute is unconstitutional and the ammunition in the indictment must be dismissed.

## CERTIFICATE OF SERVICE

I, Alejandro Santiago, hereby certify that a true and correct copy of his 28 U.S.C. section 2255 Motion to Vacate and to Set Aside has been sent to the United States Assistant Attorney's Office to the address on this __28th__ Day of __February__ 2008.

DATED: __February 28th__ 2008

*Kelli Wilson*

NOTARY PUBLIC OFFICIAL SEAL
KELLI WILSON
State of West Virginia
Federal Bureau of Prisons-FCI Gilmer
My Commission Expires
July 24, 2016
P.O. Box 5000
Glenville, WV 26351

Respectfully submitted,

*Alejandro Santiago*
Alejandro Santiago
Federal Correctional Inst.
Reg. No. #16821-424
P.O. Box 6000   Gilmer
Glenville, Wv 26351-6000